# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### April 8, 2008 Session

## MARCUS STALLWORTH v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-09360    James M. Lammey, Jr., Judge**

---

**No. W2007-00675-CCA-R3-PC  - Filed August 8, 2008**

---

The petitioner, Marcus Stallworth, pled guilty in the Shelby County Criminal Court to aggravated kidnapping and aggravated assault and received a total effective sentence of ten years incarceration in the Tennessee Department of Correction.  Subsequently, he filed a petition for post-conviction relief, alleging that his trial counsel was ineffective and that his guilty pleas were not knowingly and voluntarily entered.  After a hearing, the post-conviction court found that the petitioner failed to prove his claims, and the petitioner now appeals that ruling.  Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Matthew Ian John, Memphis, Tennessee, for the appellant, Marcus Stallworth.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Greg Gilbert, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

In November 2002, a Shelby County Grand Jury returned a multi-count indictment charging the petitioner in count one with the especially aggravated kidnapping of Gina Holley, in count two with the especially aggravated kidnapping of Jahnecia Holley, in count three with the aggravated assault of Gina Holley, and in count four with the aggravated assault of Daryl Cooper.  On May 25, 2004, the petitioner pled guilty on count one to aggravated kidnapping with an agreed sentence of

ten years, one hundred percent of which was to be served in confinement. He also pled guilty on count three to aggravated assault with an agreed sentence of three years, with release eligibility after serving thirty percent of the sentence. The plea agreement further provided that the sentences were to be served concurrently. The remaining charges were nolle prossed.

Thereafter, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective, that his conviction was based on guilty pleas which were unlawfully induced or were involuntarily entered because he did not understand the nature or consequences of the pleas, and that his conviction was "obtained in violation of improper sentencing violations." Regarding the ineffective assistance of counsel, the petitioner alleged that counsel failed to properly investigate the case, discover favorable witnesses, prepare a defense, evaluate the petitioner's competency or mental state, or confer with the petitioner to determine whether it was in the petitioner's best interest to plead guilty. Concerning the voluntariness of the pleas, the petitioner contended that he was unaware he would need to "accept[] full criminal responsibility for the acts." The petitioner maintained that he did "not stipulate to the elements the State said the Petitioner is guilty of, [therefore] the guilty plea should be set aside and held for naught." The petitioner also contended that although he always wanted to go to trial, he felt compelled to plead guilty because he believed trial counsel was not prepared for trial and had not interviewed witnesses. Further, the petitioner asserted that throughout his representation, trial counsel "coerced and urged" him to plead guilty. Finally, the petitioner alleged that the trial court impermissibly used certain enhancement factors to enhance his sentence in violation of Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004).

At the post-conviction hearing, the thirty-six-year-old petitioner testified that trial counsel was appointed to represent him after he was charged with multiple counts of especially aggravated kidnapping and aggravated assault. After counsel was appointed, the petitioner, who was on bond, went to trial counsel's office several times to talk about the case. The petitioner said that sometimes trial counsel was not at his office when he said he would be there. The petitioner testified that he wanted counsel to file motions and question witnesses. The petitioner gave trial counsel a list of nineteen witnesses, including some names, addresses, telephone numbers, and the best time to contact the witnesses. The petitioner maintained that trial counsel had not spoken with any of the witnesses on his list. The petitioner acknowledged that most of the witnesses were not physically present during the incident. However, he explained that the witnesses would have told trial counsel that the victim, Gina Holley,[1] had said that the petitioner had not kidnapped her. The petitioner said that at the time of the incident, he and Holley were in a relationship, but he caught her with another man. The petitioner said that "to get out of it," Holley probably told police that the petitioner kidnapped her.

The petitioner said that he and trial counsel talked about possible defenses, "but it was like it went in one ear and come out the other one." The petitioner stated that he made suggestions that

_____

[1] In the record, the victim's surname is also spelled "Holly." However, we have chosen to utilize the spelling contained in the indictments.

he believed relevant, but trial counsel discounted his input.

The petitioner contended that he asked trial counsel for copies of the 911 calls, the victim's and witnesses' statements, and "all things relevant to the prosecution." Initially, the petitioner maintained that trial counsel would not give him the information because "I guess he felt like I was going to sue him for ineffectiveness or something like that." However, the petitioner acknowledged on cross-examination that trial counsel at least "[s]omewhat" reviewed discovery materials with him.

The petitioner asserted that throughout the pendency of his case, he wanted to go to trial because he was innocent. His case was reset for trial at least three times. The petitioner said that on the final trial date, trial counsel approached him

> and he was telling me that he couldn't win in Judge Dailey's courtroom, and that he had been losing in trial, and he don't feel like that he can win in trial. And that kind of made me feel like he really actually wasn't prepared for trial.

The petitioner said that he never asked trial counsel to explore plea options. Nevertheless, trial counsel brought the petitioner a written plea agreement, proposing an effective ten-year sentence with release eligibility after serving thirty percent of the sentence. The petitioner said "that was the best-interest plea." Trial counsel cautioned the petitioner that at trial he could receive a sentence of twenty to forty years. Feeling he had no other choice, particularly because trial counsel had advised him that he could not win at trial and because he was facing a significantly longer sentence if convicted at trial, the petitioner chose to enter guilty pleas. The petitioner maintained that trial counsel encouraged him to plead guilty because trial counsel was not interested in defending the petitioner.

The petitioner said that the written plea agreement provided that he would receive a ten-year sentence for aggravated kidnapping and a three-year sentence for aggravated assault, both of which carried release eligibility after service of thirty percent of his sentence. The petitioner said that trial counsel advised him that it was a good deal considering the charged offenses. The petitioner stated that he signed the agreement because "it was a relative good deal." The petitioner said that after he signed the written plea agreement, the document was altered to reflect that he must serve one hundred percent of his aggravated kidnapping sentence in confinement. He stated that the plea documents provided for release eligibility after service of thirty percent of his sentence; none of the documents provided for service of one hundred percent of his sentence in confinement. The petitioner said that the change was made "behind [his] back," with parts of the plea agreement "whited out" and the changes written in afterward. He also said that although he heard the trial court at the guilty plea hearing state that the offense of aggravated kidnapping required confinement for one hundred percent of the sentence, the trial court never asked if the petitioner had any questions about the pleas and never gave him a chance to talk. The petitioner stated that he reminded trial counsel that he agreed to thirty percent, not one hundred percent, but trial counsel did not respond. The petitioner asserted that if he had been aware that he would have to serve all ten years in

confinement, he would not have entered the guilty pleas.

The petitioner agreed that at his guilty plea hearing, he told the trial court that he needed to delay execution of the sentence to find someone willing to keep his children for ten years. He said that he used the ten-year date because "I was just going by – what the time that they said I had, ten years at thirty percent."

The petitioner acknowledged that one witness, Ashley Clayton, was present for the May 25, 2004, trial date, the date the petitioner entered his guilty pleas. The petitioner said that Clayton would have testified that the victim said the petitioner did not kidnap her. The petitioner conceded that even though he knew Clayton would testify on his behalf, he still chose to enter guilty pleas.

On cross-examination, the State asked the petitioner if he had given a statement to police in which he said he and the victim "had a conversation about our relationship. She told me to put the gun away." At first, the petitioner refused to answer the question, maintaining "I'm here about ineffective, not about what happened that night." After the post-conviction court instructed the petitioner to answer the question, the petitioner said that he might have made that statement, "but it don't sound exactly how I thought." The petitioner denied that he had pulled a gun on the victim; however, he admitted that he had a gun in his car. He did not recall telling police that he had a gun in his hand, but he conceded that he might have said it.

The petitioner's trial counsel testified that he received Jencks material after the petitioner was arraigned, and he was allowed open-file discovery. Trial counsel said that he shared all discovery materials with the petitioner and reviewed the materials with him.

Trial counsel said that one month before the petitioner's third and final trial date, the petitioner gave him a list of the names and telephone numbers of witnesses. Trial counsel recalled that he talked with some of the witnesses and was able to cross-examine others at the petitioner's bond revocation hearing in April 2004. Trial counsel testified that "[t]he witnesses – what [the petitioner] thought was relevant to the case and felt would matter at trial, in my opinion, wouldn't." Trial counsel explained that the petitioner's witnesses would testify only that the petitioner and Holley were friends after the incident; the witnesses would not be able to say that the petitioner did not commit the offenses. Moreover, trial counsel recalled that two independent witnesses would have testified that the petitioner was at the scene with a gun and that he took Holley out of someone else's car and put her into his car. Trial counsel said that the petitioner had admitted this to police. Therefore, trial counsel believed that if the petitioner had testified at trial, he would likely have been convicted. Trial counsel said that he was prepared to go to trial and would have argued "intent and malice and mens rea" as defenses.

Trial counsel recalled that the State originally offered to let the petitioner enter guilty pleas with an accompanying twelve-year sentence. Trial counsel sought an eight-year sentence. Eventually, the parties compromised and agreed upon a ten-year sentence.

-4-

Trial counsel recalled that on the petitioner's third trial date, he took the petitioner into a witness room and discussed with him his statement to police. In the statement, the petitioner admitted that he had a gun in his hand when the victim got into the car with him and he drove away. Trial counsel told the petitioner that a jury could find him guilty based solely on his version of events. Trial counsel said that having meaningful conversations with the petitioner about the case was difficult, stating:

> He's got a very serious charge, he's looking at a lot of time, and he wants to believe what he wants to believe. That's been my experience with him throughout the whole time that I was representing him. It was difficult getting him to sit still long enough to say, "Look, here are the facts, here are the witness statements, here's your statement. This looks really bad." You know, his counter was always, "Well, Gina Holl[e]y and I are friends now, you know[,] . . . and everything is cool. She doesn't want to press charges."

Trial counsel stated that the petitioner "was adamant about not taking time" and was not interested in accepting a plea that would require him to serve a sentence in confinement. However, he "wasn't chomping at the bit to go to trial."

Also on the third trial date, trial counsel approached the petitioner with the offer of a ten-year sentence. Trial counsel said that when he explained the offer to the petitioner, counsel knew that the petitioner would not be eligible for probation; however, counsel was unsure if he would be eligible for parole. Trial counsel researched the issue and told the petitioner that he would have to "flatten" his ten-year sentence because aggravated kidnapping was not a parolable offense. Trial counsel explained to the petitioner "that ten years meant ten years. There was no probation; there was no parole; that he was going to have to do the ten years." Trial counsel said that he thought the petitioner understood, noting that the petitioner had even asked the trial court for a delay of execution of the sentence so he could find someone to keep his children for ten years. However, trial counsel said that he was never sure exactly what the petitioner understood because "[h]e, at times, seems intelligent; and, at times, seems like he doesn't get it at all. But we went over it."

Trial counsel recalled that he had mistakenly filled out the written plea agreement to reflect that the petitioner's aggravated kidnapping conviction carried a release eligibility of thirty percent. The trial court realized the mistake while the petitioner was on the stand at the guilty plea hearing. The petitioner heard the trial court say that a correction needed to be made, and the petitioner did not protest. Trial counsel conceded that he did not have the petitioner initial the changes on the plea agreement but opined that he should have.

At the conclusion of the post-conviction hearing, the post-conviction implicitly accredited the testimony of trial counsel and discredited the testimony of the petitioner, finding that the petitioner was aware that he would have to serve his entire ten-year sentence in confinement, trial counsel was not ineffective, and the petitioner's guilty pleas were knowingly and voluntarily entered.

On appeal, the petitioner contests this ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

### A. Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

On appeal, the petitioner complains that his trial counsel was ineffective by (1) failing to

-6-

clearly explain that the petitioner was receiving a sentence of ten years at one hundred percent, not ten years at thirty percent; (2) failing to adequately prepare for trial by investigating or interviewing witnesses; (3) failing to follow the petitioner's expressed desire to proceed to trial and instead urging him to plead guilty "because counsel stated that he could not win in that court room"; and (4) failing to ensure that the petitioner freely, voluntarily, and intelligently entered his guilty pleas.

As we stated, the post-conviction court implicitly accredited the testimony of trial counsel and discredited the testimony of the petitioner. The court noted that the petitioner and trial counsel met several times during counsel's representation of the petitioner. Trial counsel said that he discussed the charges with the petitioner, including the petitioner's incriminating statement to police. Trial counsel averred that he was prepared for trial and had interviewed many of the witnesses suggested by the petitioner, finding them unhelpful to the case. The petitioner did not present at the post-conviction hearing any of the witnesses he complained trial counsel did not interview to demonstrate the information that could have been gleaned from them. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit these witnesses might have offered to the petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. Id. Further, trial counsel negotiated a plea agreement providing for a significantly lesser sentence than the petitioner faced if convicted at trial. Notably, trial counsel opined that the petitioner likely would have been convicted at trial, especially given his statement to police. Moreover, the post-conviction court found that the petitioner understood that he was facing a sentence of ten years, one hundred percent of which was to be served in confinement. The post-conviction court found that the petitioner failed to prove by clear and convincing evidence that his counsel was ineffective. We agree. The petitioner is not entitled to relief on this issue.

B.  Knowing and Voluntary Guilty Pleas

The petitioner contends that his guilty pleas were not knowingly and voluntarily entered because (1) he did not know that acceptance of the guilty plea was contingent on him accepting full criminal responsibility for the charged acts and because he did not stipulate to the elements of the offenses the guilty pleas should be set aside; (2) he was coerced to plead guilty because counsel said that he could not win in that courtroom; and (3) he was unaware that he would have to serve one hundred percent of his ten year sentence in confinement.

To pass constitutional muster, a guilty plea must be made voluntarily, understandingly, and knowingly. Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998) (citing Boykin v. Alabama, 395 U.S. 238, 244, 89 S. Ct. 1709, 1713 (1969)); see also State v. Mackey, 553 S.W.2d 337, 341 (Tenn. 1977). To determine the voluntariness and intelligence behind a guilty plea, the court must look to various circumstantial factors, i.e.,

> the relative intelligence of the defendant; the degree of his familiarity
> with criminal proceedings; whether he was represented by competent

counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). Furthermore, the petitioner should understand the direct consequences of his guilty plea, i.e., the penalty to be imposed. Id. In determining whether a petitioner's guilty plea was knowing and voluntary, this court must look at the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). "This court is bound by the post-conviction court's findings unless the evidence preponderates otherwise." Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

The post-conviction court found that the trial court fully explained to the petitioner his rights and the "consequences of the guilty plea." The post-conviction court further found that the petitioner pled guilty to avoid possibly receiving a greater sentence if convicted at trial. The post-conviction court noted that the transcript of the guilty plea hearing reflected that the petitioner had ample opportunity to voice complaints or questions, but he did not do so. Additionally, the post-conviction court found that the petitioner was aware that he would have to serve one hundred percent of his ten-year sentence in confinement. The post-conviction court stated that while trial counsel "should have had Petitioner initial the corrections that were made on the paperwork," such an oversight did not render the petitioner's guilty pleas unknowing or involuntary.

Upon our review of the record, we agree with the post-conviction court's assessment. The proof at the post-conviction hearing reflects that the petitioner knew he was receiving a ten-year sentence and that he would have to serve all of that sentence in confinement. The proof at the hearing amply established that the petitioner sought the shortest sentence he could possibly achieve. In the face of the significant proof against the petitioner at trial, he chose to plead guilty and avoid the possibility of a much greater sentence. Further, the petitioner produced no proof at the post-conviction hearing to show that he did not know that under the terms of his guilty plea, he would be required to admit guilt. Moreover, at the guilty plea hearing, trial counsel informed the trial court:

Your Honor, just to clarify for [the petitioner], we believe the proof would have been that [he] did, indeed have a gun. [The petitioner] contests whether or not he actually pointed the gun at anyone . . . . Having said that, we'll stipulate to a factual basis.

Based upon the foregoing, we conclude that the petitioner's guilty pleas were knowingly and voluntarily entered.

## C. Blakely

Finally, the petitioner contends that his "conviction was obtained in violation of proper sentencing guidelines," arguing that the trial court violated Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004). The petitioner maintains that the trial court "departed from the guidelines

and imposed an illegal sentence, thus denying" the petitioner his constitutional rights.

        Initially, we note that <u>Blakely</u> prohibits the enhancement of sentences based upon considerations that have neither been admitted by a defendant nor determined by a jury beyond a reasonable doubt. <u>Blakely</u>, 542 U.S. at 303, 124 S. Ct. at 2537. However, such a stricture has "not been applied to sentences imposed [pursuant] to a plea-bargained agreement." <u>Keith T. Perry v. Glen Turner, Warden</u>, No. W2007-01176-CCA-R3-HC, 2008 WL 185810, at *2 (Tenn. Crim. App. at Jackson, Jan. 22, 2008), <u>perm. to appeal denied</u>, (Tenn. 2008). Therefore, as the petitioner's sentences were the result of a plea bargain, <u>Blakely</u> concerns are not implicated. Moreover, this court has previously and consistently held that <u>Blakely</u> does not apply retroactively to cases on collateral appeal. See <u>Billy Merle Meeks v. Ricky J. Bell, Warden</u>, No. M2005-00626-CCA-R3-HC, 2007 WL 4116486, at *12 (Tenn. Crim. App. at Nashville, Nov. 13, 2007), <u>perm. to appeal denied</u>, (Tenn. 2008); <u>Carl Johnson v. State</u>, No. W2003-02760-CCA-R3-PC, 2005 WL 181699, at *4 (Tenn. Crim. App. at Jackson, Jan. 25, 2005). Thus, this issue is not properly raised in a post-conviction action.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE